## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| CHRISTY DAWN VARDEN, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-34-MHT |
| | ) | (Class Action) |
| THE CITY OF CLANTON, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

### Introduction

This case is about the City of Clanton jailing some of its poorest people because they cannot pay a small amount of money. Christy Dawn Varden is a recent arrestee who is currently imprisoned by the City because she cannot afford to pay the amount of money generically set by the "bail schedule" used by the City of Clanton and its police department. In the City of Clanton, most people arrested for minor misdemeanor offenses are released almost immediately upon payment of $500 cash. Those arrestees who are too poor to afford $500 remain in jail because of their poverty until at least the following Tuesday at 3:00 p.m., when they first appear via video conference from the jail at the City's only weekly court session.

On behalf of the many other arrestees subjected to the City's unlawful and ongoing post-arrest money-based detention scheme, the Plaintiff challenges in this action the use of an unlawful generic offense-based "bail schedule" that operates to detain only the most impoverished of minor misdemeanor arrestees. The City's policy has no place in modern American law.

By and through her attorneys and on behalf of herself and all others similarly situated, the Plaintiff seeks in this civil action the vindication of her fundamental rights, injunctive relief

assuring that her rights and the rights of the other Class members will not continue to be violated, and a declaration that the City's conduct is unlawful.

## Nature of the Action[1]

1.      It is the policy and practice of the City of Clanton to refuse to release misdemeanor arrestees from jail unless they pay a generically set "bond" amount.  That amount is $500 for every misdemeanor offense except DUI offenses, for which an arrestee is kept in jail unless she can pay $1,000.[2]  Because this sum is set generically by reference to the alleged offense of arrest, no individualized factors are considered, and anyone who cannot afford to pay is held in jail at least until the following Tuesday at 3:00 p.m., when the City holds its only weekly court session. Members of the public are barred from attending that court session.

2.      Plaintiff seeks declaratory, injunctive, and compensatory relief.

## Jurisdiction and Venue

3.      This is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, *et seq.*, and the Fourteenth Amendment to the United States Constitution.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## Parties

5.      Plaintiff Christy Dawn Varden is a 41-year-old resident of Clanton, Alabama.  She represents herself as an individual and a Class of similarly situated people all subject to the City's post-arrest detention scheme.

---

[1] Plaintiff makes the allegations in this Complaint based on personal knowledge as to matters in which she has had personal involvement and on information and belief as to all other matters.

[2] Felony arrestees are not subject to the jurisdiction of the City of Clanton and are instead processed according to policies adopted by Chilton County.

6.     Defendant City of Clanton is a municipal corporation organized under the laws of the State of Alabama. The City operates the Clanton Police Department and the Clanton Municipal Court. The City also contracts with the Chilton County Jail to confine arrestees of the Clanton Police Department who cannot afford to pay the generically scheduled cash bond. The City notifies the Chilton County Jail to release arrestees as soon as the cash bond is paid to the City.

### Factual Background

**A.     The Plaintiff's Arrest**

7.     Christy Dawn Varden is a 41-year-old mother of two children.

8.     Ms. Varden was arrested by Clanton police on January 13, 2015, outside of a Walmart store in Clanton, Alabama. She was charged with four misdemeanor offenses, including shoplifting, resisting arrest, failure to obey a police officer, and possession of drug paraphernalia.

9.     Ms. Varden was taken to jail and told that she would be released if she paid a "bond" to the City of Clanton of $500 for *each* of her charges. She was told that she would be kept in jail unless she paid $2,000. *See* Exhibit 1, Declaration of Christy Dawn Varden.[3]

10.     Ms. Varden is indigent. She has no assets and is not employed. She suffers from several severe physical and mental illnesses that prevent her from working. She is prescribed several medications to deal with her physical and mental illnesses. She was most recently employed approximately two years ago, but she had to quit her job due to an extended hospital stay in the intensive care unit.

11.     Ms. Varden depends on food stamps to survive. She receives less than $200 per month in food stamps, which is her only income. She does not own any real property or a car.

12.     Ms. Varden resides with her 66-year-old mother and children in Clanton.

---

[3] Another person arrested by the City of Clanton within eight minutes of Ms. Varden and charged with multiple minor drug offenses was released from jail immediately after paying the City of Clanton the required cash payment.

13.   Ms. Varden was not told when she would be brought to court and has not been brought to court for an initial appearance. Pursuant to City policy, the earliest that Ms. Varden would be brought to court for a first appearance is Tuesday, January 20, 2015, nearly a week after her arrest.

**B.    The City's Policies and Practices**

14.   The named Plaintiff would be released immediately by the City of Clanton if she or a family member paid the amount set by the City of Clanton.

15.   The treatment of the named Plaintiff and other Class members is caused by and is representative of the City's post-arrest detention policies and practices.

16.   As a matter of policy and practice, when the City of Clanton Police Department makes an arrest for a minor misdemeanor offense, officers inform the arrestee at booking that the person will be released immediately if the person pays $500 cash.[4] In the case of misdemeanor DUI offenses, the person is told that the amount necessary to secure release is $1,000. The arrestee is told that the arrestee will remain in jail if the arrestee is not able to make that payment.

17.   Those arrestees unable to pay for release are eventually told that their first court appearance will be the following Tuesday at 3:00 p.m. The City of Clanton holds court only one time per week: each Tuesday at 3:00 p.m.

18.   Because court is held only once per week, an arrestee too poor to buy out of jail could spend more than six days in jail prior to a first court appearance.

---

[4] Because of the common availability of commercial bail bonds, those that remain in the custody of the City of Clanton are typically those that cannot even afford to pay a third-party bonding agent. The amount charged by a bonding agent to pay a $500 cash bond is typically $50, although such agents are free to refuse to pay for the release of an arrestee for any reason or for no reason. Thus, the availability of third-party agents, at least for those arrestees who can afford $50 but not $500, is no guarantee.

4

19.     After an arrest, City of Clanton officials do not deviate from this "bail schedule" of $1,000 per DUI offense and $500 per other misdemeanor offense.[5]

20.     Unlike many other cities, the City of Clanton does not allow post-arrest release on recognizance or with an unsecured bond (in which a person would be released by promising to pay the scheduled amount if the person later does not appear). Instead, City officials require that the payment amount be made up front.

21.     The City of Clanton Police Department made 1,079 arrests for misdemeanor offenses in 2013. The Clanton police made 931 misdemeanor arrests in 2012 and 822 in 2011.

22.     Many of Clanton's minor misdemeanor arrestees are released soon after arrest upon payment of the scheduled amount of cash. Some remain detained for varying lengths of time until they or their families are able to borrow sufficient amounts of money or arrange for third-party payment. Others, like the named Plaintiff, who are too poor even to find anyone to pay the cash bond for them, are kept in jail for up to six days before their first court appearance.

23.     Each Tuesday afternoon, there are commonly between three and ten destitute defendants who were not able to pay enough money to secure their release. The City of Clanton forces these inmates to appear by video screen in the courtroom from the jail.

24.     The City of Clanton requires that the courtroom be empty and closed to the public for all such video proceedings. No person is allowed to enter the proceedings, which often include only the City prosecutor, City judge, and the defendant on video. On occasion, an arrestee is represented by an attorney, who is allowed to be present. All other members of the public are

---

[5] In the case of arrests on warrants for the alleged violation of probation rather than on a new arrest, the City's policy and practice is to base the amount of money necessary to secure release on the amount of debts owed by the person on their court costs and privatized probation fees. Thus, if an arrestee is unable to afford the balance of her court costs and fees, the person will be held at least until the following Tuesday by the City of Clanton. If the probationer is able to afford the balance of the fees, the arrestee is allowed to pay immediately and the person is released.

informed by uniformed City of Clanton Police Officers that they are not allowed to observe the City's judicial proceedings, which include arraignments, pleas, trials, revocation hearings, and other proceedings.

25.     The video feed from the jail is broadcast in the building's waiting room, although the screen is muted so that no sound from the proceedings is audible. City officials refuse, as a matter of City policy, to allow the sound to be broadcast. According to City officials, no audio recordings or transcripts of the proceedings are available.

26.     Despite the First Amendment's guarantee of open public court proceedings and binding precedent from the Supreme Court of the United States and the Eleventh Circuit requiring all such proceedings to be open to the public, it is not possible for a member of the public to observe court proceedings involving inmates in the City of Clanton.

27.     Because of Clanton's unprecedented and illegal courtroom closure policies, it is difficult for the public to obtain accurate details concerning how many impoverished Clanton arrestees are unable to buy their release each week.

### Class Action Allegations

28.     The named Plaintiff brings this action, on behalf of herself and all others similarly situated, for the purpose of asserting the claims alleged in this Complaint on a common basis.

29.     A class action is a superior means, and the only practicable means, by which the named Plaintiff and unknown Class members can challenge the City's unlawful poverty-based post-arrest detention scheme.

30.     This action is brought and may properly be maintained as a Class action pursuant to Rule 23(a)(1)-(4) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

31.     This action satisfies the numerosity, commonality, typicality, and adequacy

requirements of those provisions.

32.    The Plaintiff proposes one Class seeking declaratory and injunctive relief.   The Declaratory and Injunctive Class is defined as:  All persons who are currently or who will become in the custody of the City of Clanton as a result of an arrest involving a misdemeanor offense.

**A.    Numerosity.  Fed. R. Civ. P. 23(a)(1)**

33.    The City of Clanton Police Department made 1,079 arrests for misdemeanor offenses in 2013.[6]  Each arrestee is presented with the City's standard cash bond choice of pay or jail.  Arrestees are held in jail for varying lengths of time depending on how long it takes them to make the cash payment that the City requires for their release.

34.    Some arrestees are able to pay for release immediately.  Others are forced to wait a day or two days until they or family members can make the payment.  Others are not able to pay or to find someone else to pay for them even after a few days.

35.    Each weekly court appearance in the City's municipal court commonly includes up to ten confined inmates arrested since the previous Tuesday who are still in custody because they could not afford the cash amount set by the City's schedule.    Thus, the number of future class members, even in a period of several months, numbers in the hundreds.

**B.    Commonality.  Fed. R. Civ. P. 23(a)(2).**

36.    The relief sought is common to all members of the Class, and common questions of law and fact exist as to all members of the Class.  The named Plaintiff seeks relief concerning whether the City's policies, practices, and procedures violate the rights of the Class members and relief mandating the City to change its policies, practices, and procedures so that the constitutional rights of the Class members will be protected in the future.

---

[6] The City appears to have been on a similar pace of arrests in 2014, but final statistics are not yet publicly available.

7

37.     These common legal and factual questions arise from one central scheme and set of policies and practices: the City's post-arrest detention schedule.  The City operates this scheme openly and in materially the same manner every day.   The material components of the scheme do not vary from Class member to Class member, and the resolution of these legal and factual issues will determine whether all of the members of the class are entitled to the constitutional relief that they seek.

Among the most important, but not the only, common questions of fact are:

- Whether the City of Clanton has a policy and practice of using a generic offense-based "bail schedule" to determine the amount of money necessary to secure post-arrest release;
- Whether the City of Clanton requires that scheduled amount to be paid up front in order to allow release;
- What post-arrest procedures the City of Clanton performs on misdemeanor arrestees;
- Whether the City of Clanton bars the public from attending its court proceedings.

38.     Among the most important common question of law are:

- Whether a "bail schedule" setting standard amounts of cash required up front to avoid post-arrest detention violates the Fourteenth Amendment's due process and equal protection clauses.[7]

**C.     Typicality.  Fed. R. Civ. P. 23(a)(3).**

39.     The named Plaintiff's claims are typical of the claims of the other members of the Class, and she has the same interests in this case as all other members of the Classes that she represents.  Each of them suffers injuries from the failure of the City to comply with the basic

---

[7] Other common questions pervade this case relating to other claims made in this Complaint. *See infra* at ¶¶ 49-52. For example, whether the City of Clanton bars the public from entering its courtroom such that the Plaintiff's and other Class members' appearances will be closed to the public and, if so, whether that policy violates the First Amendment and Supreme Court and Eleventh Circuit precedent requiring all judicial proceedings in American courts to be fully open to the public. Similarly, common questions exist as to whether non-individualized and entirely generic monetary bail requirements are arbitrary and excessive under the Eighth Amendment.

constitutional provisions: they are each confined in jail because they could not afford to pay the City's standardized cash bond amount.  The answer to whether the City's scheme of policies and practices is unconstitutional will determine the claims of the named Plaintiff and every other Class member.

40.     If the named Plaintiff succeeds in the claim that the City's policies and practices concerning post-arrest detention violate her constitutional rights, that ruling will likewise benefit every other member of the Class.

**D.     Adequacy.  Fed. R. Civ. P. 23(a)(4).**

41.     The named Plaintiff is an adequate representative of the Class because her interests in the vindication of the legal claims that she raises are entirely aligned with the interests of the other Class members, who each have the same basic constitutional claims.  She is a member of the Class, and her interests coincide with, and are not antagonistic to, those of the other Class members.

42.     There are no known conflicts of interest among members of the proposed Class, all of whom have a similar interest in vindicating their constitutional rights in the face of their unlawful treatment by their local government.

43.     The Plaintiff is represented by attorneys from Equal Justice Under Law who have experience litigating complex civil rights matters in federal court and extensive knowledge of both "bail schedule" schemes and the relevant constitutional law.  Class Counsel has conducted an investigation over a period of months into the use of the generic "bail schedule," including numerous interviews with witnesses, experts, City employees, inmates, families of inmates, local attorneys, community members, statewide experts in the functioning of Alabama municipal courts, and national experts in post-arrest detention procedures and constitutional law. Class Counsel has studied the way that these systems function in other cities in order to investigate the wide array of

reasonable constitutional options in practice for municipalities like the City of Clanton. As a result, Class Counsel has devoted enormous resources to becoming familiar with the "bail schedule" scheme and with all of the relevant state and federal laws and procedures that relate to it.

44.     Counsel for the Plaintiff has also been the lead attorney in a recent constitutional civil rights class action lawsuit against the City of Montgomery. *See Mitchell et al, v. City of Montgomery*, 2014-cv-186 (M.D. Ala. 2014). That case involved a major investigation and landmark litigation to end widespread injustices involving the jailing of impoverished people by the City of Montgomery over a period of years for their non-payment of debt from traffic tickets.[8]

45.     The Plaintiff is also represented in this case by multiple local Class Counsel. Matthew Swerdlin and J. Mitch McGuire[9] have also devoted time and resources to investigating the City's policies and practices, and they each have experience in the functioning of Alabama municipal police departments, including post-arrest procedures. Each also regularly represents impoverished and marginalized people in civil and criminal actions in Alabama and federal courts. Each was also local counsel in the *Mitchell* class action lawsuit before this Court. Moreover, Class counsel William Dawson is one of the most experienced criminal defense and civil rights lawyers in the State of Alabama, having worked for over 40 years on behalf of impoverished criminal defendants in the State of Alabama, tried over 500 jury trials in state and federal courts, and successfully brought dozens of class action cases. The interests of the members of the Class will

---

[8] Counsel was also previously the lead attorney in a constitutional civil rights class action against the District of Columbia in the United States District Court for the District of Columbia. *See* 1:13-cv-00686-ESH (D.D.C. 2013). In that litigation, undersigned counsel was responsible for investigating and building the complex constitutional claims against the District of Columbia, authoring the legal filings in the class action case, and negotiating a Memorandum of Understanding with the District of Columbia Attorney General that stayed the class action litigation and began to implement sweeping changes to the city's policies and practices governing the civil forfeiture of property by the District's Metropolitan Police Department—procedures that affect thousands of putative class members every year.

[9] Matthew Swerdlin is owner of Matthew Swerdlin, Attorney at Law, in Birmingham. J. Mitchell McGuire is Managing Partner of McGuire & Associates, in Montgomery. William Dawson is the owner of the Dawson Law Office in Birmingham.

be fairly and adequately protected by the Plaintiff and her attorneys.[10]

### E. Rule 23(b)(2)

46.     Class action status is appropriate because the City, through the policies, practices, and procedures that make up its post-arrest detention scheme has acted in the same unconstitutional manner with respect to all class members.  The City of Clanton has created and applied a simple scheme of post-arrest detention and release: it charges $500 to every misdemeanor arrestee (and $1,000 for every DUI arrestee).  The City releases those who can pay and detains those who cannot. The detained arrestees are eventually taken to court on the following Tuesday for a first appearance, sometimes as many as six days after arrest.

47.     The Class therefore seeks declaratory and injunctive relief to enjoin the City from continuing in the future to detain impoverished arrestees who cannot afford cash payments. Because the putative Class challenges the City's scheme as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the Class, Rule 23(b)(2) is appropriate and necessary.

48.     Injunctive relief compelling the City to comply with these constitutional rights will similarly protect each member of the Class from being subjected to the City's unlawful policies and practices.  A declaration and injunction stating that the City cannot use a cash "bail schedule"

---

[10] At least with respect to a Damages Class under Rule 23(b)(3) (which the Plaintiff does not seek here), courts have held that "ascertainability" is, in essence, a fifth Rule 23 prerequisite.  A class must be "adequately defined and clearly ascertainable." *De Bremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).  "In other words, the class must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class," although "'it is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.'" *Earnest v. GMC*, 923 F. Supp. 1469, 1473 & n.4 (N.D. Ala. 1996) (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

Although it is doubtful that such a requirement should exist with respect to a purely injunctive class under Rule 23(b)(2), *see, e.g., Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-593 (3d Cir. 2012), that requirement is easily met here.  The City of Clanton already has in its possession the identity of each and every person who it is keeping in its custody after an arrest because of the inability to post a cash bond.  Also, by necessity, the City will come to know the identity of each person that it arrests in the future.

that jails indigent arrestees but frees arrestees with financial means would provide relief to every member of the Class.  Therefore, declaratory and injunctive relief with respect to the Class as a whole is appropriate.

49.    Plaintiff seeks the following relief and hereby demands a jury in this cause for all matters so appropriate.

### Claims for Relief

### Count One:  Defendant City of Clanton Violates Plaintiff's Rights By Jailing Her Because She Cannot Afford A Cash Payment Prior to a First Court Appearance.

50.    Plaintiff incorporates by reference the allegations in paragraphs 1-49.

51.    The Fourteenth Amendment's due process and equal protection clauses have long prohibited imprisoning a person for the person's inability to make a monetary payment.  Defendant violates Plaintiff's rights by jailing her when she cannot afford to pay the amount set by the generic "schedule" used by the City of Clanton.

### Count Two: Defendant City of Clanton Violates Plaintiff's Rights By Imprisoning Her After Arrest Based on a Generic Non-Individualized Monetary Bail.

52.    Plaintiff incorporates by reference the allegations in paragraphs 1-51.

53.    The Defendant's use of a generic non-individualized offense-based "bail schedule" is arbitrary and excessive.  By applying the same $1,000 per charge cash bond to all DUI arrestees and the same $500 cash bond to all other arrestees, the Defendant divorces the post-arrest, pretrial release determination from any individualized factors. The fundamental state[11] and federal right to an individual's liberty, therefore, is conditioned on an amount of money unrelated to any process

---

[11] In addition to the fundamental constitutional liberty interest in freedom from physical confinement, Alabama law creates a state-law liberty interest in release after arrest and prior to trial. Alabama law defines "bail" as the "release" of a person "with or without security." Ala. Code § 15-13-102. Alabama law also provides an explicit state-law right to bail, with the liberty interest recognized both in the Alabama Constitution and in several statutes. *See* Ala. Code § 15-13-2 ("In all cases other than [capital cases], a defendant is, before conviction, entitled to bail as a matter of right."); *see also* Ala. Code § 15-13-102; Ala. Const. Art. I § 16.

or assessment of what would be required to assure that person's appearance in violation of the Fourteenth Amendment's substantive and procedural due process guarantees, the Eighth Amendment's prohibition on Excessive Bail, and the Supreme Court's holding that setting of a non-excessive and reasonable bail requires an individualized consideration of circumstances.

**Count Three: Defendant City of Clanton's Closure of the Courtroom for all Hearings, Including Arraignments, Pleas, and Trials, Violates the First Amendment.**

54.   Plaintiff incorporates by reference the allegations in paragraphs 1-53 above.

55.   The City of Clanton enforces a policy to bar the public from its courtroom. The City of Clanton Police Department stations officers and supervisors at the courtroom entrance and blocks the entry of any individual who is not a party to a case on the docket. During the inmate docket, which is conducted by video from the jail, no member of the public is allowed to enter the courtroom. Proceedings involving inmates are thus conducted, usually without an attorney representing the inmate, solely in the presence of the City prosecutor and City judge. These policies and practices are in flagrant violation of clearly established Supreme Court and Eleventh Circuit precedent requiring that all criminal judicial proceedings be open to the public.

### Request for Relief

WHEREFORE, Plaintiff and the other Class members request that this Court issue the following relief:

a. A declaratory judgment that the Defendant City violates the Plaintiff's and Class members' constitutional rights by jailing them because of their inability to pay a generically set amount of money to secure release after an arrest;

b. A declaratory judgment that the Defendant City violates Plaintiff's and Class members' constitutional rights by forcing them to appear for criminal court proceedings that are closed to the public and an order requiring the City to ensure that its officers and officials allow proceedings in criminal cases to be open to the public;

c. An order and judgment preliminarily and permanently enjoining Defendant City of Clanton from enforcing the unconstitutional post-arrest money-based detention policies and practices against the Plaintiff and the Class of similarly situated people that she represents;

d.  A judgment compensating the individual named Plaintiff for the damages that she previously suffered as a result of the City's unconstitutional and unlawful conduct, including damages resulting from her confinement in jail;

e.  An order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and proper.

Respectfully submitted,

/s/Matthew Swerdlin
Matthew Swerdlin (ASB-9090-M74S)

Matthew Swerdlin, Attorney at Law
1736 Oxmoor Road #101
Birmingham, AL 35209
(205)-793-3517
matt@attorneyswerdlin.com

/s/ J. Mitch McGuire
J. Mitch McGuire (ASB-8317-S69M)

Managing Partner
McGuire & Associates, LLC
31 Clayton Street
Montgomery, AL 36104
(334)-517-1000
http://www.mandabusinesslaw.com

/s/ William M. Dawson
William M. Dawson (ASB-DAW002)
Dawson Law Office
2229 Morris Avenue
Birmingham, Alabama 35203
205-307-7021

/s/ Alec Karakatsanis
Alec Karakatsanis (D.C. Bar No. 999294)
(Pending admission *Pro Hac Vice*)

Co-Founder
Equal Justice Under Law
916 G Street, NW Suite 701
Washington, DC 20001
(202)-681-2409
alec@equaljusticeunderlaw.org

*Attorneys for Plaintiffs*

14