**IN THE MIDDLE DISTRICT COURT OF THE UNITED STATES**
**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | | |
|---|---|---|
| **CHRISTY DAWN VARDEN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:15-cv-34-MHT** |
| | ) | |
| **THE CITY OF CLANTON,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**BRIEF IN OPPOSITION TO CLASS CERTIFICATION**

**I.      INTRODUCTION**

  The burden of proof to establish the propriety of class certification rests with the advocate of the class. *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975); *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir. 1997).  Thus, Ms. Varden has the burden of proof in this case.  She has not and cannot satisfy that burden.

**II.     RULE 23(A) REQUIREMENTS**

  Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate. *Valley Drug Co. v. Geneva Pharms, Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Pursuant to *Rule 23(a)*, a class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. *Fed. R. Civ. P. 23(a)*. "These four requirements commonly are referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation, and they are designed to effectively limit class claims to those fairly encompassed

by the named plaintiffs' individual claims." *Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1278 (11th Cir. 2000)* (internal quotation marks and citations omitted).

The nature of the claim that Plaintiff has brought, coupled with the facts of the case, render this case inappropriate for class certification.

## A.   Numerosity

Plaintiff's class definition includes every person who has been and who will be arrested by the Clanton Police.  This figure clearly is one large enough to satisfy the numerosity requirement of Rule 23(a)(1).   The City's arrest figures are public record and Clanton does not dispute those reported by Plaintiff in her motion for class certification.  Doc. 4 at 3.  What is less clear, however, is the number of people who are actually unable to make bail under the bond schedule at issue in this lawsuit.  However, under Plaintiff's theory of class certification (that the class is everyone arrested) that number should not matter (notwithstanding the lengths to which she has gone to establish it, *see* Doc. 4 at p. 3 (alleging, albeit without adequate support, that between three and ten people are not able to make bond every week)).[1]

## B.   Commonality

Plaintiff argues that all "commonality" requires is a showing that the "disputed questions are capable of class-wide proof or resolution."  Doc. 4 at 7 (citing *Murray v. Auslander*, 244 F.3d

---

[1] For purposes of explanation and clarity, determining the number of people who are not able to make bond each week is not as simple as quoting the number of people who appear for hearings on Tuesdays from the county jail.  People there could have failed to make bond for a number of reasons including not directly related to inability to pay:  (a) the knowledge that arraignments are held on Tuesdays and that it would not be worth the effort to make bail if the arrest was close in time, (b) the fact that the person might be required to make cash bail because of earlier failures to appear and thus is not given the full options available to others, (c) the fact that the person could be in the county jail because he is facing "holds" from other jurisdiction due to other outstanding arrest warrants, and (d) the possibility that the person could be serving time in the county jail on matters already adjudicated.  *See,* e.g., Doc. 24-1 & 24-2.  *In* fact, a thorough and time-consuming review of the county jail records would be required to determine why a person who appeared in the Municipal Court from jail had to do so, and, even then, the true reason might not be apparent.  *See* Declaration of Velma Tinsley, attached hereto.

807, 811 (11th Cir. 2001).  The main common questions of fact identified by Ms. Varden are whether Clanton uses a bail schedule, whether it "requires that scheduled amount to be paid up front before it will release a person from jail" (which is not the case, except for individuals who have had prior failures to appear), and what post-arrest procedures are in place.  Doc. 4 at 7-8.

Then the Plaintiff sets out what she contends is the "most important dispositive common question of law" – whether a "bail schedule setting generic amounts of cash required up front to avoid post-arrest detention violates the Fourteenth Amendment's due process and equal protection protections." Doc. 4 at p. 8.  Again, this statement is inaccurate and misleading. Clanton does not require cash to be paid up front to obtain release, except for those who have had previous failures to appear. Two other options are available, one which requires no money payment, the property bond, and one which involves a third-party surety and payment of one tenth of the total amount due.  *See* Doc. 24-1 & 24-2.

While, at the class certification stage, the merits of the Plaintiff's claims are not before the Court, *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153, 40 L. Ed. 2d 732, 749 (1974) (*quoting Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir.1971), "evidence relevant to the commonality requirement is often intertwined with the merits." *Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 679 (11th Cir. 1983). Accordingly, it sometimes is necessary to "to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S. Ct. 2364, 2372, 72 L. Ed. 2d 740, 752 (1982).

In *Hudson v. Delta Air Lines*, 90 F.3d 451, 457 (11th Cir. 1996), the Eleventh Circuit, probing beyond the pleadings, concluded that the issue of commonality precluded class certification where representations made by Delta regarding a "Special Retirement Plan" were at issue. The Court concluded that the counts of the complaint relative to that issue were not

susceptible to "class-wide proof" because the plaintiffs would have to show that "all members of the class would have deferred their retirement in the hope that they would be eligible for the Special Retirement Plan to be offered in the future." *Id*.  The Court concluded that "[t]his sort of decision would necessarily have been highly individualized for each potential retiree." *Id*.

Similarly, in this case, commonality is undermined by the fact that there are a variety of reasons why any individual might not have availed him or herself of release pursuant to the bond schedule either immediately or before the Tuesday hearing at which time they were arraigned. These could range from "my wife was angry at me" to "my parents were out of town" to "my friend could not locate my check book or credit card" to "it was not worth the cost where I knew I was going to be arraigned shortly" to "I preferred to get time served toward my sentence" to "I just did not understand how to take advantage of the bond schedule."  In other words, first, because people arrested may not have a credit, debit card or all the necessary cash on their person or may have other incentives to stay, even those able to pay might not obtain "immediate" release, or release at all prior to the Tuesday arraignment.  Second, where individuals are subject to holds from other jurisdictions, they might not be able to obtain their release for reasons unrelated to the bond schedule or their ability to meet its requirements.  *See* Docs. 24-1, 24-2, & Declaration of Velma Tinsley, attached hereto.

The Plaintiff will likely argue that *Delta Air Lines* involved a damages class and so is inapplicable, but the Court's analysis was focused not on Rule 23(b)(3) factors but Rule 23(a)'s commonality requirement. Thus, its reasoning applies equally to this case.  Why would the existence of individualized questions matter in a case involving injunctive relief as opposed to damages?  In *Delta Air Lines* individualized questions mattered because it was fundamentally unclear that a cognizable class even existed or who its members were without undertaking detailed,

4

individualized questions into account. It matters here because this Court is being asked to determine how and to whom the use of the bond schedule resulted in injury.  It is far from clear who, exactly, its existence injured and why.

Here, the injury is defined as being forced to stay in the Chilton County jail longer than those who are able to take advantage of the bond schedule.  The individualized questions include, therefore, whether the reason for one stay being longer than another was because of actual financial worth, or whether it was the result of difficulty finding someone at home who could sign a property bond, who could cash the defendant's check, locate the defendant's own funds or who could loan money.  For people who were still in jail at the time of the Tuesday hearings, the individualized questions would include whether the person was actually in jail because he or she was only recently arrested and whether he or she had not yet been able to arrange for someone to deliver the needed funds or to sign a property bond.  Alternatively, the person might still be in custody due to holds from other counties or former failures to appear.  While the Plaintiff presents the case as one in which there are the haves and have-nots, where the haves can always take advantage of the bond schedule and the have-nots cannot, one's ability to take advantage of the bond schedule is not so cut and dried.

In other words, mere unemployment did not mean that a person was unable to take advantage of the bond schedule.  Husbands, wives, brothers, sisters, parents, guardians, and friends are commonly called upon to help with property bonds, cash bonds, or third-party surety bonds when people are arrested and regularly deliver funds belonging to the arrested person or take other measures to assist with bail.  Thus, even those deemed indigent under the plaintiff's theory of the case could well be regularly taking advantage of the bond schedule and not suffering additional days in jail merely because of its existence. Thus, the very problem which precluded certification

in *Delta Air Lines* is at play here.  Commonality does not exist because there are too many individualized questions at play even to determine who might be in the class of people "injured" by the bond schedule.

### C.     Typicality

Rule 23(a) typicality requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3).  As the Plaintiff herself asserts, "'A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3).' *Murray*, 244 F.3d at 811." Doc. 4 at p. 9.

Typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large. Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class." *Prado-Steiman*, 221 F.3d at 1279.  Therefore, "any analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987).  Accordingly, this court must determine "that [the] class representative has Article III standing to raise each class subclaim." *Prado-Steiman*, 221 F.3d at 1279. *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. Fla. 2003)

Here Plaintiff contends that her claims, and the defenses thereto, are typical of other class members because: "the named Plaintiff's legal claims are the same as the legal claims of the other members of the proposed Class.  She is injured in the same way as the other Class members: they are all jailed by the City because they cannot afford to pay up front the amount set by the standard 'schedule' used by the City…" Doc. 4 at p. 10.

First, the representation that all people jailed by the police officers of the City of Clanton must "pay up front" the amount set in the standard bail schedule to be released is incorrect. As uncontested (and uncontestable) affidavits submitted in support of the City's Brief in Opposition to the Plaintiff's Motion for Preliminary Injunction show, there are three methods for obtaining immediate release after arrest by Clanton law enforcement officers. *See* Docs. 24-1 & 24.2. First, there is a cash bond whereby someone can pay (or make a call and have a friend or relative bring) $500 for each offense with the exception of the offense of Driving Under the Influence which has a $1,000 bond amount. Since it is highly unlikely that anyone arrested (or anyone generally) is carrying that kind of money, the release depends on the person at issue reaching some third party who can access the funds and bring them to the jail. Next, a defendant can obtain release through a third-party surety, or bail bondsman, by paying one tenth of the full amount of the bail set. In Ms. Varden's case, that would have been $200.00. Since these days in particular, people do not regularly carry around even that amount of cash, even the people who choose these options (unless they have on their person a credit or debit card with sufficient available funds) are at the mercy of friends' and family members' willingness to obtain the funds for them, bring them to the jail and assist in bailing them out. And, finally, there is a third way of obtaining release through bail. That is where a friend or family member owns real property and can sign a signatory bond (hereinafter a "property bond"). The injury claimed in this case is that some individuals, who could not take advantage of one of the above-named options, remained in jail while others were able to take advantage of the bond schedule and obtain their release.

Plaintiff is not typical of the class of people allegedly injured by the existence of the bond schedule here, i.e., the individuals who remained in jail longer because they were unable to obtain release pursuant to one of the three methods available under the bond schedule system. Her interest

and injury are different from that set of defendants.  Her injury is different in that, as noted elsewhere, it was, at best, self-inflicted in that it appears that she delayed contacting someone to sign a property bond for her.  (That person signed one immediately after the county filed charges against her.)  In other words, the delay of her release could well have been the result of an inability to obtain access to someone on the outside who could provide the needed assistance (property bond signatory) rather than the result of any alleged intrinsic inability to take advantage of the system.  That same delay could occur where anyone (even someone with funds) had trouble contacting someone to assist them.  The injury is not the result of the existence of the bond schedule or the direct result of her low income.  Had she made the contact and property bond arrangement earlier, she could have been released earlier.

Clanton can present a defense in this case to her claim which is not typical of the defenses that Clanton would have in connection with those people who had, in fact, no opportunity to obtain their release.  As noted in Clanton's brief in opposition to Plaintiff's preliminary injunction motion (Doc. 24), in this case, Clanton can show that Ms. Varden had the ability to obtain release pursuant to the bond schedule through a property bond as she did immediately after being released by Clanton and in connection with Chilton County's charges against her.  The issue of law will be whether Ms. Varden (who had also previously been released pursuant to a property bond on city charges and could have taken advantage of that option here) has standing to bring this claim and thus to represent the class since her alleged injury appears to have been decidedly different from those of other class members and not the result of the bond schedule.

Ms. Varden is also not typical of the entire class she seeks to represent, in that she was released before the seventy-two-hour period which the Alabama Supreme Court in *Alabama v.*

*Blake,* 642 So.2d 959 (Ala. 1994), indicates is the presumptively reasonable time in which to hold a bond hearing.

This is, of course, really another way of saying that Ms. Varden is likely not a member of a certifiable class of people who were even arguably injured because of the bond schedule, i.e., people who truly had no way to take advantage of the bond schedule.  However, it also qualifies as a reason why Ms. Varden does not satisfy the typicality prerequisite to class certification.

Of course the typicality problem can also be put this way:  the majority of the class were not injured as a result of the bond schedule and, as a result, lack standing, because the majority of people arrested, as Plaintiff acknowledges, were able to obtain release through use of the schedule. *See* Doc 2 at p.4. Thus, Clanton has a defense, with respect to the majority of the class which is not typical of that which it has in connection with those who, in actual fact, could not obtain release through use of the bond schedule.

Moreover, the Eleventh Circuit has recognized that class certification may be denied on typicality grounds where a plaintiff seeks to represent a class which is too diverse. *See Hines v. Widnall*, 334 F.3d 1253, 1257-1258 (11th Cir. 2003).  In *Hines,* the district court found that the only three plaintiffs who had standing did not adequately represent the spectrum of jobs and divisions at issue in the class they were trying to represent because they "seek to represent a class that is far too broad." The Eleventh Circuit concluded that that the district court had not abused its discretion in connection with that ruling.  *Id; see also Coon v. Georgia Pac. Corp*., 829 F.2d 1563, 1566-67 (11th Cir. 1987) (finding that although plaintiff denied promotion could possibly represent a smaller class, the plaintiff never proposed such a class and the district court did not abuse its discretion in denying certification of a class that encompassed promotion, hiring, and transfer claims).

That is the case here.  As alluded to above, the class here would be quite diverse.  It would include those who could afford immediate release because they had cash on their person (and clearly *benefited* from the bond schedule), those who could obtain release in a number of hours or days prior to the Tuesday hearing by obtaining assistance from outside sources (and *benefited* from the bond schedule), and those who because of inability to obtain help from outside were unable to make bail (and therefore arguably suffered but not necessarily as a result of the bond schedule and only possibly because of a lack of funds).  For that reason, in addition to the Plaintiff's lack of standing, Plaintiff cannot satisfy the typicality requirement.

### D.    Adequacy

The adequacy-of-representation requirement "'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003)* (quoting *In re HealthSouth Corp. Sec. Litigation, 213 F.R.D. 447, 460-461 (N.D. Ala. 2003)).*   "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate. *See* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Proc. § 1768, at 326 (2d ed. 1986) ('It is axiomatic that a putative representative cannot adequately protect the class if his interests are antagonistic to or in conflict with the objectives of those he purports to represent.')." *Valley Drug Co*. at 1189**.**

The conflict must be a "fundamental" one going to the specific issues in controversy. *Id* (*citing* 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Proc. § 1768 at 326-27; 1 Herbert Newberg & Alba Conte, Newberg on Class Actions § 3.26 at 3-143 to 144 (3d ed. 1992)). A fundamental conflict exists "where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id*.   In such a situation, the named

representatives cannot "'vigorously prosecute the interests of the class …' because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members." *Id.*

In *Valley Drug Co.*, the practices at issue in the litigation had potentially benefited some of the pharmacy class members. *Id*. at 1188 n. 16 & 1196. For that reason, the Circuit Court reversed the District Court's ruling on class certification because the plaintiffs had not met their burden of demonstrating that no fundamental conflict existed within the class.  *Id*. at 1190 (noting that the plaintiffs had not presented any facts to challenge the defendant's claim that class members who represented over half the claims had experienced a net gain from the absence of the generic drug in the market place).

For this same reason, in *Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000), the Eleventh Circuit reversed a District Court decision granting class certification to plaintiffs where the class definition included both cattle producers who claimed to have been harmed by contracts and marketing agreements and unnamed members of the class who had benefitted. In that case, the Court reiterated the rule that "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." Id. at 1280.  And the Eleventh Circuit has held that any benefit to class members from the challenged practice (including non-economic benefits) creates such a conflict.  *See*, *e.g.*, *Grimes v. Fairfield Resorts, Inc.*, 331 Fed. Appx. 630 (11th Cir. 2007).

Because Ms. Varden was among the class of Clanton Municipal Court criminal defendants who could have posted a property bond and could have been released quickly (and certainly prior to the weekly hearing), she has a substantial conflict of interest with other members of the proposed class.  And for the same reason, the class Plaintiff seeks to certify has an inherent internal conflict

of interest.  Some class members (arrested persons) clearly benefited by quick release pursuant to the bond schedule.

The same issue that required the Eleventh Circuit to reverse *Valley Drug* and *Pickett* unquestionably prevents certification in this case.  As even the former Fifth Circuit recognized in *Rainwater*, a bond schedule is an efficient means of obtaining "speedy and convenient release" for those who can "meet its requirements." *See Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir. 1978) (use of a bond schedule "provides speedy and convenient release for those who have no difficulty in meeting its requirements.").  By seeking to certify all people arrested by the Clanton police as a single class, Plaintiff proposes the certification of a class, some members of which actually directly benefit or benefited from the bond schedule, and, thus, under the Eleventh Circuit's holdings in *Valley Drug, Pickett* and *Grimes* cannot be adequately represented here.

One need only look to the possible alternative to the bond schedule that the Plaintiff proposes in her reply brief in support of preliminary injunction (Doc. 28) to see how the conflict would play out to the detriment of those who benefit from the bond schedule.  As the first of her "alternatives to jailing arrestees because they are poor" Ms. Varden suggests that "the City could detain *every* arrestee without monetary bail (as the federal system does) until a prompt initial appearance before a judge." Doc. 28 at p. 4 (emphasis in original).  Another alternative deemed acceptable by the Plaintiff is for all arrestees to be given paperwork such as an Affidavit of Substantial Hardship "designed to determine whether arrestees meet the state-law definition of indigence" which Plaintiff contends (incorrectly[2]) to be defined for any and all purposes at 125%

---

[2] Ms. Varden's definition of "indigent" as being at 125% of the federal poverty level is not correct.  It would have no relevance to whether a person arrested could or could not take advantage of the bail schedule.  The reference is to state guidelines for determining whether a criminal defendant can afford to hire his or her own counsel, which is certainly different from the question here, i.e., whether a person could locate a friend or family member to sign a property bond or whether he or she could obtain as little as $50.00.  *See* Ala. Code Sec. 15-21-1 (establishing a presumption of inability to afford counsel for those whose income level

of the federal poverty level.  Doc. 28 at p.5.  The "non-indigent arrestees" after filling out such paperwork would still be charged the $500 bond fee, and the indigent arrestees would be released "upon signing a recognizance bond or agreeing to other reasonable conditions."  *Id.*

Under either alternative, instead of being permitted immediately to take advantage of the bond schedule and to be released, the portion of the defined class (which includes Ms. Varden) who could potentially obtain immediate or very quick release through the bond schedule, would be detained further for the purpose of ensuring that those who cannot take advantage of the bond schedule are released at the same time as those who can.   Such alternatives are not in the best interest of the majority of the class members, including Ms. Varden, who have historically been able to take advantage of the bond schedule and who could potentially obtain immediate or very quick release. Doc. 2 p. 4 (majority are released pursuant to bond schedule).

## III.   RULE 23(B)(2) REQUIREMENTS

Federal Rules of Civil Procedure, Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   As the Plaintiff here apparently seeks to represent everyone arrested by Clanton law enforcement and the bond schedule is available to all who are arrested by Clanton law enforcement personnel, it would seem that Ms. Varden has shown that Clanton (or rather its Municipal Court as explained in Doc. 24) has acted on grounds generally applicable to the class.

But that does not answer the question whether "that final injunctive relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  As explained in more detail above,

---

is at or below 125% of the federal poverty level).  Obviously, determining whether someone can sign a property bond, obtain the signature of someone else on such a bond, pay $50 to a third-party surety, or even $500 in cash is a different analysis than whether someone can afford to hire a professional to represent him or her in a criminal matter.

doing away with the bond schedule would not necessarily benefit those who are able to take advantage of it, and it could very likely have a detrimental result to that portion of the class. Thus, this is not a case that is appropriate for certification under rule 23(b)(2).

As further illustration, one need only look to the fact that neither notice to class members nor the opportunity to opt out is required in connection with Rule 23(b)(2) classes. This is because it is understood that a class certified pursuant to Rule 23(b)(2) is more cohesive and homogeneous than, say, a Rule 23(b)(3) class. *See, e.g., Holmes v. Continental Can Co.*, 706 F.2d 1144, 1155 n.8 & 1156-1157 (11th Cir. Ala. 1983) (calling Rule 23(b)(2) injuries "group" injuries rather than individualized injuries) (citing various sources for the proposition that Rule 23(b)(2) classes are presumed to be homogeneous and cohesive minimizing the need for notice and opt out provisions). In other words, Rule 23(b)(2) certification should hinge on a determination that the relief awarded will not be to the detriment of some of the class members, since those class members will neither have the opportunity to object nor to opt out of the class.

In this case, the group the Plaintiff seeks to certify as a class is neither cohesive nor homogeneous, and it is clear that an injunction doing away with the bond schedule could potentially detrimentally affect certain class members by prolonging the time they must wait in jail until their release.

## CONCLUSION

For the foregoing reasons, class certification is due to be denied.

s/ Shannon L. Holliday
Shannon L. Holliday (ASB-5440-y77s)
Lee H. Copeland (ASB-3461-o72l)
Copeland, Franco, Screws & Gill, P.A.
444 S. Perry Street (36104)
Post Office Box 347
Montgomery, AL 36101-0347
T:  334/834-1180    F:  334/834-3172
Email:  holliday@copelandfranco.com
Email:  copeland@copelandfranco.com
**Counsel for Defendant – City of Clanton**

James W. Porter, II
R. Warren Kinney
Porter, Porter & Hassinger, P.C.
Post Office Box 128
Birmingham, AL 35201-0128
T:  205/322-1744
Email:  jwporterii@pphlaw.net
Email:  wkinney@pphlaw.net
**Co-Counsel for Defendant – City of Clanton**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of February, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew Swerdlin
1736 Oxmoor Road #101
Birmingham, AL 35209
Email:  matt@attorneyswerdlin.com

J. Mitchell McGuire
McGuire & Associates, LLC
31 Clayton Street
Montgomery, AL 36104
Email:  jmcguire@mandabusinesslaw.com

William M. Dawson
Dawson Law Office
2229 Morris Avenue
Birmingham, AL 35203
Email:  billdawson94@hotmail.com

Alec Karakatsanis
Equal Justice Under Law
916 G Street, NW Suite 701
Washington, D.C. 20001
Email:  alec@equaljusticeunderlaw.org

James W. Porter, II
R. Warren Kinney
Porter, Porter & Hassinger, P.C.
Post Office Box 128
Birmingham, AL 35201-0128
Email:  jwporterii@pphlaw.net
Email:  wkinney@pphlaw.net


  s/  Shannon L. Holliday
Of Counsel