# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CHRISTY DAWN VARDEN,      )
                                         )
        Plaintiff,        )
                                         )
v.                                 )     Case No.: 2:15-cv-34-MHT
                                         )
THE CITY OF CLANTON,       )
                                         )
        Defendant.      )

## DEFENDANT CITY OF CLANTON'S MOTION TO DISMISS THE PLAINTIFF'S CLASS ACTION COMPLAINT

COMES NOW Defendant, the City of Clanton, Alabama, and moves this Court to Dismiss the Plaintiff's Complaint in this case, averring as follows:

## Introduction[1]

The Plaintiff's Complaint grossly misrepresents facts regarding arrests of criminal defendants for charges arising within the jurisdiction of the Clanton Municipal Court. For example, most people arrested by the City of Clanton, for charges ranging anywhere from Driving Under the Influence of Drugs or Alcohol to theft of property[2], ***do not*** obtain their release "almost immediately upon payment of $500 cash." The placement of security with the Court in order to reasonably

---

[1] The City of Clanton, in addition to the arguments in favor of dismissal of the Complaint in this case contained herein, also adopts all of the arguments made in the previously filed Response to Plaintiff's Motion for a Preliminary Injunction [Doc. 28] and the City's Brief in Opposition to Class Certification [Doc. 32].

[2] The Plaintiff would characterize these offenses as "minor misdemeanor offense[s]." Doc. 1, p. 4. They characterize them this way despite that, according to the Center for Disease Control and Prevention, "[e]very day, almost 30 people in the United States die in motor vehicle crashes that involve an alcohol-impaired driver. This amounts to one death every 51 minutes." http://www.cdc.gov/Motorvehiclesafety/impaired_driving/impaired-drv_factsheet.html.

assure the criminal defendant's future appearance may be in the form of cash, commercial surety bond, or the signature bond of a property owner.[3]  Therefore, most people obtain their release by hiring a commercial bonding company to post their bail, or by having a friend or relative that owns property sign for the person's release.  Ms. Varden has not alleged that she was denied the opportunity to make bail on the charges pending against her according to any of the three options provided by the Clanton Municipal Court.

The Defendant has provided relevant factual background in this case in its Response to the Plaintiff's Motion for a Preliminary Injunction. Doc. 24, p. 1-4.  It is important to note again, though, that the Plaintiff was arrested on four criminal charges for Clanton municipal violations (theft of property, resisting arrest, disorderly conduct and possession of drug paraphernalia), and that she was *also* charged by Chilton County with two counts of assault on Sheriff's Deputies. *See* Doc. 24-2.  It is also important to note that Ms. Varden obtained her release on charges filed in Chilton County District Court by having a property owner sign a bond *after* she had already been released from custody on the charges pending in the Clanton Municipal Court, *i.e.* through one of the three manners for obtaining bail that was indisputably available to her previously. *Id.*  Suffice it to say for purposes of this Motion to Dismiss, however, that the Plaintiff, through the filing

---

[3] The Parties do not dispute the availability of these three options (cash bond, commercial surety bond, or property bond) have been afforded to criminal defendants by the Clanton Municipal Court in order to obtain their pretrial release.

of her Class Action Complaint [Doc. 1], attempts to challenge the application of monetary bail upon persons too indigent to afford to even hire a commercial bail bonding company in order to obtain their release. *See* Doc 1, p. 4, n. 4. The Complaint makes the following three Claims for Relief:

> Count One: "Defendant City of Clanton Violates Plaintiff's Rights By Jailing Her Because She Cannot Afford A Cash Payment Prior to a First Court Appearance"
>
> Count Two: "Defendant City of Clanton Violates Plaintiff's Rights by Imprisoning Her After Arrest Based on a Generic Non-Individualized Monetary Bail"
>
> Count Three: "Defendant City of Clanton's Closure of the Courtroom for all Hearings, Including Arraignments, Pleas, and Trials, Violates the First Amendment"

Presumably, although nowhere explicitly stated, the first two Counts recited above are largely based upon claims of Equal Protection and Due Process violations under the Fourteenth Amendment, and excessive bail violations under the Eighth Amendment. The third Count, quite obviously, rests on claims of First Amendment violations. For the various reasons asserted below, all such claims are due to be dismissed.

### Claims brought Pursuant to 42 U.S.C. § 1983 are Due to be Dismissed

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979). The first step in any such claim is to

identify the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394, (1989); *Baker v. McCollan*, 443 U.S., at 140. The Plaintiff has not specifically stated upon what Constitutional or federal right she has brought her claims, nor how specifically the right was violated. Based upon the allegations contained in the Complaint, though, it would appear that she implicates the Eighth and Fourteenth Amendments to the U.S. Constitution. *See* Doc. 1, p. 12.

The Plaintiff has only sued the City of Clanton in this case. However, municipalities may not be sued pursuant to § 1983 for claims based on *respondeat superior*, i.e. injuries inflicted by their officers, agents or employees. *Monell v. New York Department of Social Services*, 436 U.S. 658, 694-95 (1978). Rather, municipalities may only be sued under § 1983 where the city or town has a policy or custom causing the injury of which a plaintiff is complaining. *Id.* Only if the plaintiff shows that injury resulted from a "permanent and well settled" practice may liability attach for injuries resulting from that practice. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.... A custom is a practice that is so settled and permanent

that it takes on the force of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.1997).

The "policy" in this case that the Plaintiff alleges violated her constitutional rights, though, was not created or adopted by the City of Clanton, but rather the Clanton Municipal Court. Doc 24-1. The Clanton Municipal Court, though, is governed *not* by the City of Clanton, but pursuant to the Code of Alabama. *See* Ala. Code §§ 12-14-1, *et seq.* The Alabama Supreme Court, not the municipality, provides the rules for administration of the municipal court administrative agency. § 12–14–52. Furthermore, the Alabama Constitution, Art. VI, § 145 specifically prescribes the jurisdiction of municipal courts and the minimum qualifications of the judges presiding over them. The City of Clanton "can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control." *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1331 (11th Cir.2003) (quoting *Turquitt v. Jefferson County*, 137 F.3d 1285, 1292 (11th Cir.1998)). Because the City of Clanton has no control over the over the acts of those persons comprising the Clanton Municipal Court, all claims against it and brought pursuant to 42 U.S.C. § 1983 are due to be dismissed.[4]

### Plaintiff Varden has not Named the Proper Party Defendant

[4] For these same reasons, *i.e.* that the City of Clanton has no control over the Clanton Municipal Court, the Plaintiff's claims against the City of Clanton due to the Clanton Municipal Court's procedures with regard to supposedly closing its Court to the public are due to be dismissed. The dismissal of the Plaintiff's First Amendment claims will be discussed in greater depth *infra*.

Along the same lines that her claims brought under 42 U.S.C. § 1983 fail, so too is the Complaint due to be dismissed for failing to name the proper party as a defendant. Again, the policy Plaintiff Varden seeks to attack is not one over which the City of Clanton has control. The Clanton Municipal Court judge is the person charged by law with setting bail and pretrial terms, not the City, and the Court created the bond schedule at issue here. *See* Ala. Code Sec. 12-14-5. The City has no control over the bond schedule or its application to pretrial detainees.

The municipal courts of the State of Alabama are courts of the unified judicial system of Alabama. While municipalities can choose to fund a municipal court (as opposed to sending their cases to the local district court judges) and can appoint judges, once that choice is made and those judges are appointed, the municipality and its officials have no control, nor should they have, over the actions of those judges. Municipal judges must be independent. They must follow state law and comply with state procedural and court administrative rules. They fall under the auspices of State Administrative Office of Courts and are subject to the requirements set out in the Alabama Canons of Judicial Ethics. *See* Doc 24, n. 4. In fact, it would be patently inappropriate for a city mayor or prosecutor, to have control of any kind over the nature of the Court's orders or the manner in which a municipal judge rules.

Alabama Code Sec. 12-14-5 explicitly charges these independent municipal judges with authority over setting bail and appearance bonds:

> Municipal judges shall admit to bail any person charged with violation of any municipal ordinance by requiring an appearance bond, with good security, to be approved by the respective municipal judges or their designees, in an amount not to exceed $1,000.00, and may, in their discretion, admit to bail such person on a personal recognizance bond, such bonds to be conditioned on the appearance of such person before the judge on a day named therein to answer the charges preferred against him. The municipal judge may waive an appearance bond upon satisfactory showing that the defendant is indigent or otherwise unable to make bond.

As established previously, the bail schedule in this case was the product of the municipal court judge's action. *See* Doc. 24-1. Neither the City nor its police officers should be liable for following an order of a judge who is an arm of the state court system. *See, e.g., Woods v. City of Michigan*, 940 F.2d 275, 285 et seq. (7th Cir. 1991).

Of course, the Plaintiff's rationale for suing the City of Clanton is abundantly clear: it would be contrary to the dictates of § 1983 for this Court to enter an injunction against the Clanton Municipal Court or the judge himself. Section 1983 precludes this Court from entering an injunction against a judicial officer acting in his judicial capacity. 42 U.S.C. § 1983 ("in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was

violated or declaratory relief was unavailable.").  It would also be contrary to due process as he is not sued in this proceeding.

Because the proper party is not before the Court and because the relief sought – control over the setting of bail by the Clanton Municipal Judge is not available from the City – Ms. Varden's claims against the City of Clanton are due to be dismissed.

## Equal Protection Claims are Due to be Dismissed

In addition to failing to bring proper claims against the City of Clanton, the Plaintiff's claims are also due to be dismissed for failing to state a claim upon which relief can be granted.  "To establish an equal protection violation, a plaintiff must show that the state treated him [or her] disparately from other similarly situated persons and that the disparate treatment burdens a fundamental right or is based upon membership in a suspect class." *Williams v. Jefferson County, Ala.*, 482 Fed.Appx. 480, 482 (11th Cir. 2012)(citing *DeYoung v. Owens*, 646 F.3d 1319, 1327 (11th Cir. 2011).  The City of Clanton's treatment here, though, was simply not disparate, but rather quite the opposite.  It required a bond of $500 for every arrestee, except for every DUI arrestee, whereupon it required a bond of $1,000.  The Plaintiff's Complaint very specifically alleges that the City of Clanton "divorces the post-arrest, pretrial release determination from any ***individualized*** factors." Doc. 1, p. 12 (emphasis added).  Thus, the Plaintiff does not allege that

the "bail schedule" was applied disparately, but rather that it was *not* applied

disparately, *i.e.* that it was based upon necessarily unique and differing criteria.

Any and all Equal Protection claims in the Complaint are due to be dismissed on

this ground alone.

All claims for Equal Protection violations are also due to be dismissed

because the Plaintiff has failed to state upon what basis an equal protection

violation occurred.  Ms. Varden has plainly stated that she "is indigent." Doc 1, p.

3.  She has also stated that she falls into a category of persons "who are too poor

even to find anyone to pay the cash bond for them." Doc. 1, p. 5.[5]  However,

indigent persons, on that single basis, have <u>never</u> been held to be members of a

suspect class. *Harris v. McRae*, 448 U.S. 297, 323 (1980) (noting that poverty is

not a suspect classification); *Riviera v. Allen*, 144 F.3d 719, 727 (11th Cir.

1998)("indigents [not] suspect class"); *Driggers v. Cruz*, 740 F.3d 333, 337 (5th

Cir. 2014)(holding that "**an individual's indigence does not make that**

**individual a member of a suspect class for equal protection purposes**"); *Abdul-*

*Akbar v. McKelvie*, 239 F.3d 307, 317 (3rd Cir. 2001)(" Neither prisoners nor

indigents are suspect classes"); *Murray v. Dosal*, 150 F.3d 814, 818 (8th Cir.

1998)(stating that "[n]either prisoners nor indigents constitute a suspect class");

---

[5] It must not be overlooked that a cash bond is only one of three methods for a person to obtain bail pursuant to
the previously used schedule by the Clanton Municipal Court.  It is unclear, though, how a person's indigency can
cause her be too poor to find someone *else* who could sign for her release.  Again, she did exactly this in order to
obtain her release on charges arising within the jurisdiction of the Chilton County District Court. *See* Doc. 24, p.
2, n. 1; Doc. 24-1 and attachments.

*Chestnut v. Magnusson*, 942 F.2d 820, 824 (1st Cir. 1991)(holding that "[t]he indigency that may lead to an inability to post bail does not suffice to create a class calling for strict scrutiny"); *Tucker v. Branker*, 142 F.3d 1294, 1299 (D.C. Cir. 1998); *Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir. 1997)("Nor is indigency a suspect classification"); *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999).

Neither has the Plaintiff stated the City of Clanton violated a fundamental right. While she has alluded to a "fundamental constitutional liberty interest in freedom from physical confinement" [Doc. 1, p. 12, n. 11], any such liberty interest would be governed in this case by her right to be free from unreasonable searches and seizures under the Fourth Amendment.[6] The lawfulness of her arrest under the Fourth Amendment, though, has nowhere been contested by the Plaintiff.

What she claims is that she was effectively denied bail by the Clanton Municipal Court because she could not afford any of the three options available to her, despite doing so on Chilton County's charges. *See* n.5, *supra*. However, pretrial release on bond has not been declared a "fundamental right" and would therefore not implicate the Fourteenth Amendment's Equal Protection Clause.[7, 8]

---

[6] Very shortly after Ms. Varden's arrest, the Clanton Municipal Court magistrate found probable cause for the City's Police Officer, Justin Beane, to have arrested the Plaintiff on charges of theft of property third, resisting arrest, disorderly conduct, and possession of drug paraphernalia. Quite clearly, then, her seizure or "physical confinement" was not unreasonable under the Fourth Amendment. This fact is so salient because the Plaintiff's claims in this case completely fail to account for the undisputed fact that a City of Clanton police officer had probable cause to arrest the Plaintiff for her criminal behavior, justifying government intrusion on her liberty interests. "[A]n arrest **without probable cause** violates an individual's constitutional protected liberty interest." *Jones-Bolding v. Garrett*, 2013 WL 2450720, at *2 (N.D. Ala. May 24, 2013) (citing *Marx v. Gumbinner*, 950 F.2d 1503, 1505–06 (11th Cir.1990)).

[7] As of 2006, "the Supreme Court [had] characterized the following, non-textual liberty interests as 'fundamental' and, as such, rights that should prevail if in conflict with governmental authority or other, less valued, liberties:

Rather, the plaintiff's claims should be analyzed under the Eighth Amendment's prohibition on excessive bail. "Since an indigent can never post monetary bail in any amount, due process or equal protection considerations based on the ability of the indigent to fund the bail would destroy the entire concept of monetary bail. Excessiveness [under the Eighth Amendment], the only constitutionally articulated guide, should be the measure used." *Pugh v. Rainwater*, 572 F.2d 1053, 1069 (5th Cir. 1978)(Clark, C.J., concurring). The Plaintiff's claims for Equal Protection violations are therefore due to be dismissed.

## The Plaintiff's Eighth Amendment Claims are Due to be Dismissed

The U.S. Supreme Court has demonstrated that there is no absolute right to bail. *U.S. v. Salerno*, 481 U.S. 739, 753 (1987). Rather, the Eighth Amendment states that "[e]xcessive bail shall not be required," and imposes a limitation on bail only where it has been determined that the amount of bail set for a particular criminal charge exceeds that "necessary to ensure the arrestee's presence at trial." *Salerno*, 481 at 753. However, "a bail setting is not constitutionally excessive

---

(i) the right to marry; (ii) the right to procreate; (iii) the right to purchase and use contraceptives; (iv ) the qualified right to an abortion; (v) the right to custody of one's children; (vi) the right to keep a family together; (vii) the right of parents to direct the education and upbringing of their children; (viii) the right to marital privacy; (ix) the right to bodily integrity; (x ) the right to refuse unwanted, lifesaving, medical treatment;30 (xi ) the right to travel within the United States; (xii) the right to vote; (xiii) the qualified right to control the dissemination of private information;(xiv) the right of all persons to equal access to the courts; and … (xv) the right of adults to engage in private, consensual, non-commercial, sexual activity common to a homosexual lifestyle." *Williams v. King*, 420 F.Supp.2d 1224, 1229-30 (N.D. Ala. 2006). No fundamental right to bail has since been added to this list.

[8] Furthermore, the Clanton Municipal Court imposes bail requirements to promote its "compelling interest in assuring the presence at trial of persons charged with a crime." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978). Thus, the use of a bail scheduled would be subject to strict scrutiny. *See Reno v. Flores*, 507 U.S. 292, 302 (1993).

merely because a defendant is financially unable to satisfy the requirement." *U.S. v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988); *see also United States v. Jessup*, 757 F.2d 378, 388-89 (1st Cir. 1985)(holding that if a defendant cannot afford bail and must be detained pending trial, it is "not because he cannot raise the money, but because without the money the risk of flight is too great"). Therefore, simply because Plaintiff Varden claims she could not afford to make bail on the criminal charges pending against her, this does not mean that the bail set was necessarily excessive under the Eighth Amendment.

When the Clanton Municipal Court instituted the use of the bail schedule, it did so *not* to procure the incarceration of pretrial detainees through the implementation of excessive bail, but to reasonably assure the defendant's presence at trial. A "bond schedule represents an assessment of what bail amount would ensure the appearance of the average defendant facing such a charge. The schedules are therefore aimed at assuring the presence of a defendant." *Fields v. Henry County, Tenn.*, 701 F.3d 180, 184 (6th Cir. 2012). This very point has been corroborated by the Alabama Legislature; in determining bail that the judicial officer feels "is sufficient to guarantee the appearance of the defendant[,] … amounts of bail may be set by a judicial officer in a **standard bail schedule** as prescribed by the judge or pursuant to the bail schedule promulgated by Supreme Court rule." Ala. Code § 15-13-103. Indeed, the City of Clanton's bail schedule

was well within that proscribed by the ALABAMA RULES OF CRIMINAL PROCEDURE, which calls for bail of between $300 and $1,000 for municipal ordinance violations. Ala. R. Crim. P. 7.2.[9] Having modeled its own bail schedule on that promulgated by the Alabama Supreme Court, the City of Clanton has clearly attempted to do nothing more than reasonably assure a defendant's presence at future court proceedings.

Furthermore, bail schedules attempt to ensure that defendants charged with similar crimes are not given dissimilar bail amounts. *See Stack v. Boyle*, 342 U.S. 1, 5 (1951). They also "provide[] speedy and convenient release for those who have no difficulty in meeting its requirements." *Rainwater*, 572 F.2d at 1057. In fact the *en banc* Court in *Rainwater* specifically upheld the constitutionality of Florida's bail schedule. *Id.* at 1053. Thus, since bail schedules are not unconstitutional, but rather "aimed at assuring the presence of a defendant," *Fields, supra.*, the City of Clanton's use of such a schedule – and one within the range proscribed by the Alabama Supreme Court in the Rules of Criminal Procedure – does not violate the Eighth Amendment, warranting dismissal of such claims made in the Plaintiff's Complaint.

## The Plaintiff's Due Process Claims are Due to be Dismissed

---

[9] "$300 was set as the lower limit in compliance with Ala. Code 1975, § 15-13-105, providing that 'in violation and misdemeanor cases the minimum amount of bail **shall** be $300 for **each offense** charged.'" Ala. R. Crim. P. 7.2

The Due Process Clause of the Fourteenth Amendment provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." The Due Process Clause has been interpreted to have two components: procedural due process and substantive due process. Procedural due process ensures that the when government action deprives a person of life, liberty or property, it is done so in a fair manner. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Substantive due process prevents the government from infringing on "certain 'fundamental' liberty interests … unless the infringement is narrowly tailored to serve a compelling state interest," *Reno v. Flores*, 507 U.S. 292, 302 (1993), such as "assuring the presence at trial of persons charged with crime." *Rainwater*, 572 F.2d at 1056.

A.    <u>Substantive Due Process</u>

As previously noted, n. 7, *supra.*, no fundamental right to pretrial release on bond has been created by Supreme Court precedent.[10] Rather, the Court is hesitant to create new fundamental rights. Substantive due process analysis must "begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.'" *Reno*, *supra.*, 507 U.S. at 302 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). Instead of attempting to break new

---

[10] Rather, as also previously noted, the Supreme Court has held that there is no absolute right to bail. *Salerno*, 481 U.S. at 753.

ground, however, the Plaintiffs rights allegedly affected by the actions of the City of Clanton should be addressed via the Constitutional provisions specifically applicable to the allegations contained in this case, i.e. the Fourth and Eighth Amendments.

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994)(quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Plaintiff has not challenged the lawfulness of her arrest under the Fourth Amendment. The only explicit Constitutional Amendment applicable to this case is, therefore, the Eighth Amendment and its prohibition on excessive bail. Because the bail schedule utilized by the City of Clanton was implemented as the most reasonable manner in which to assure a defendant's presence at trial (*see* the immediately preceding section regarding Eighth Amendment Claims), it is not excessive under the Eighth Amendment. Since no fundamental or textual right has been violated by the City of Clanton, Plaintiff Varden suffered no infringement upon her substantive due process rights.

    B.    <u>Procedural Due Process</u>

The Plaintiff has made no claims for violations of procedural due process. Even had she, they would be due to be dismissed because there is no right to speedy bail. *See Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004)("there is no right to post bail within 24 hours of arrest"); *Woods v. City of Michigan City*, 940 F.2d 275, 283 (7th Cir. 1991)(Will, D.J, concurring)("nothing in the eighth amendment, however, guarantees instant release for misdemeanors or any other offense"). Furthermore, it is undisputed that Plaintiff Varden was released from the Chilton County Jail within 72 hours of her arrest and without having to post any form of surety bond. Quite clearly, then, had she brought any claims for procedural due process violations, they would have been properly subject to dismissal.

### Plaintiff's State Law Claims, if any, are Due to be Dismissed

The Plaintiff has failed to identify upon what theory she brings her claims under the law of the State of Alabama. Art. 1, § 16, of the Alabama Constitution of 1901 provides:

> That all persons shall, before conviction, be bailable **by sufficient sureties**, except for capital offenses, when proof is evident or the presumption great; and that excessive bail shall not in any case be required.

The Plaintiff seems to argue that she should have a right to obtain bail *without* sufficient sureties, but that is not what the law requires. Rather, the law clearly

allows for judicial officers to set bail in the amount they feel will reasonably assure

the presence of criminal defendants in court.

> Admission to bail is the **order of a judicial officer** of any court of the State of Alabama, or one of its subdivisions, that the defendant be discharged from actual custody on bail. Judicial officers of all courts in the State of Alabama shall see that every defendant arrested and in custody has an **opportunity to give bail**, in cases in which the defendant is entitled to bail and in cases pending before the court, and shall see that the amount of bail is established. The amount of bail **shall be set in the amount that the judicial officer feels, in his or her discretion, is sufficient to guarantee the appearance of the defendant**. Bail amounts shall not exceed the statutory limits otherwise set out in the laws of this state. The amounts of bail may be set by a **judicial officer in a standard bail schedule** as prescribed by the judge or pursuant to the bail schedule promulgated by Supreme Court rule.

Ala. Code § 15-13-103. As previously discussed, the bail schedule implemented

by the Clanton Municipal Court was well within the parameters of the rules

promulgated by the Alabama Supreme Court, *i.e.* Ala. R. Crim. P. 7.2. It was

designed to sufficiently guarantee the appearance of a criminal defendant, and

therefore fully complied with Alabama law.

Furthermore, Ms. Varden was released from the Custody of the Clanton

Municipal Court within 72 hours of her arrest. Any challenges made by the

Plaintiff pursuant to the Alabama Supreme Court's holding in *State v. Blake*, 642

So.2d 959 (Ala. 1994)[11], would be moot as Ms. Varden was released from custody

---

[11] The Plaintiff desperately attempts to attribute implications to the Court's holding in *Blake* that simply are not there. *Blake* struck down a provision of Article VII of the Bail Reform Act of 1993 which ***prevented*** an indigent criminal defendant from being released on judicial public bail less than three (3) days after his or her arrest. The provision **mandated** that an indigent defendant be held in jail for ***at least*** three days prior to even having an

on charges in the Clanton Municipal Court within 72 hours of her arrest. This is so because, and only to the degree that *Blake* could even be construed as making bail review hearings mandatory within 72 hours of arrest, Plaintiff Varden was indisputably released from (the City of Clanton's) custody within three days.

## **Plaintiff Varden has no Standing to Bring the Claims Alleged**

The Plaintiff, Christy Varden, was arrested on four misdemeanor counts by the City of Clanton on January 13, 2015. Doc. 24, p. 1. She was thereafter, and related to this same incident on Jan. 13th, charged with two counts of assault in the Chilton County District Court. *Id.* Plaintiff Varden was held on criminal charges arising in the Clanton Municipal Court and in the Chilton County District Court at the Chilton County jail. *Id.*, p. 1-2. After the filing of her Motion for a Temporary Restraining Order, she notes that she was "released from the City's custody expeditiously." Doc. 28, p. 2. However, upon her release from the City's custody on its charges pending against her, it is undisputed that Plaintiff Varden was *not* released from the custody of Chilton County. Rather, she was unable to obtain her release from the Chilton County jail until someone listed as having the same address as the Plaintiff signed a property bond to secure her release. Doc. 24-2.

In order to establish standing to bring her claims in the Complaint, the Plaintiff must show "personal injury fairly traceable to the defendant's allegedly

---

opportunity to be released. *Blake*, 642 So.2d at 966-68. *Blake* did not hold that keeping arrestees in jail due to claims of their inability to make bail violated the U.S. or State Constitutions. Rather it held that preventing courts from providing "judicial public bail" to indigent defendants within three days of their arrest did violate their rights and served no interest of the government. *Id.* at 967.

unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). However, the Plaintiff's claimed injuries in this case are more attributable to Chilton County than to the City of Clanton. Had the City of Clanton released the Plaintiff immediately upon her arrest on Jan. 13th, she still would have remained in jail until "Peggy Jones" signed a property bond to secure Plaintiff Varden's release on January 16, 2015 at 3:34 PM.

Her release on Chilton County charges via one of the three methods available to the Plaintiff on the City of Clanton's charges further shows her lack of standing to bring the claims alleged in her Complaint. Ms. Varden's inability to obtain her release was not a result of her indigency, but rather her inability to have Ms. Jones execute a property bond more quickly. Thus, she has no standing to bring the claims alleged in this case. *See, e.g., Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1152 (2013)(finding that a plaintiff's "self-inflicted injuries" could not be fairly traceable to the government's purported activities). All of the Plaintiff's claims in the Complaint are due to be dismissed on lack of standing to bring them.

**The Complaint should be Dismissed Based upon Abstention Doctrines**

Pursuant to the reasoning of the Eleventh Circuit in Pompey v. Broward County, 95 F.3d 1543, 1549 (11th Cir. 1996), this Court should abstain from exercising jurisdiction in this case. While in that case the issues were different –

that court's alleged failure to appoint counsel and to inquire into defendant's ability to pay child support– the Court's reasoning is applicable here:

> [I]t appears that what the plaintiffs really want in this regard is for the district court somehow to force the state judges to conduct a more "thorough inquiry" into each parent's ability to pay, and somehow to force the state judges to follow what plaintiffs perceive to be the state's own laws and procedures.

*Pompey v. Broward County*, 95 F.3d 1543, 1549 (11th Cir. 1996). Based on the remedy sought, the Eleventh Circuit dismissed the case on abstention grounds. *Id.* at 1555 (dismissal of equitable claims against judges, mirroring dismissal against other defendants).

In this case, while the Plaintiff might argue that all that she is seeking is an order enjoining Clanton from using the Municipal Court's bond schedule, the injunction she seeks is actually far more intrusive than that. She seeks to prevent Clanton's municipal court judge from requiring any sort of bail, from making any independent determinations relative to alternative measures that might ensure a defendant's appearance at court, and from otherwise exercising his proper judicial function. The City of Clanton may be the Defendant here, even if improperly so, but the Plaintiff seeks to have this Court usurp the authority of a judge of the Unified Judicial System of Alabama.

## All First Amendment Claims are Due to Be Dismissed

The Complaint alleges that the "City of Clanton requires that the courtroom be empty and closed to the public" and that uniformed City of Clanton Police Officers prevent the public from observing the "City's judicial proceedings, which include arraignments, pleas, trials, revocation hearings, and other proceedings." Doc. 1, p. 5-6. The Clanton Municipal Court does no such thing. Without question, though, the Court has taken measures to control its courtroom during court sessions in which well over 200 people could be in attendance. The Clanton courtroom can only accommodate so many people, and rather than permit the continuous distractions from the large number of people who were not currently called before the Court or who were not specifically interested in the case before the Court at that moment, it would sometimes cause people to be excluded.

The Complaint correctly notes that a video feed projects the events being conducted in the courtroom via a video monitor, but that no sound was previously available. The Clanton Municipal Court has since modified its video monitoring system such that the proceedings of the Court are now audible to persons waiting outside the courtroom.[12] By providing audio and visual feeds of the events transpiring when the Clanton Municipal Court is in session, any requests for injunctive and/or declaratory relief under the First Amendment are now moot.

A.    <u>Plaintiff Varden Lacks Standing to Bring First Amendment Claims</u>

---

[12] An affidavit attesting to the fact that sound is now being projected into the waiting area outside the courtroom will be submitted shortly before this Court

The Plaintiff has nowhere stated or alleged any injuries due to the claims in the Complaint brought for supposed First Amendment violations. To show standing, a Plaintiff must demonstrate "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen, supra.,* 468 U.S. at 751. However the Plaintiff has not alleged any injuries due to the claims brought under the First Amendment. "A plaintiff is deemed to have suffered an injury in fact—'an invasion of a judicially cognizable interest"—when he demonstrates a harm that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."" *Endlam v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006)(citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir.2003)). No such injury has even been alluded to by the Plaintiff in her Complaint, warranting dismissal of her claims.

Moreover, her claims brought pursuant to the First Amendment fail to comply with Federal pleading standards. A complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 2009 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Having failed to allege any facts at all showing that the Plaintiff suffered injuries pursuant to her claims of First

Amendment Violations, which would therefore entitle her to relief, she has no standing and her claims are due to be dismissed.

B.    The Plaintiff has Sued the Improper Party

Municipalities may only be sued under 42 U.S.C. § 1983 where the city or town has a policy or custom causing the injury of which a plaintiff is complaining. *Monell*, 436 U.S. at 694-5 (1978).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rand that he or she could be said to be acting on behalf of the municipality." *Town of Lake Hamilton*, 117 F.3d at 489.  The Clanton Municipal Court is separate and distinct from, and wholly independent of, the City of Clanton. *See* discussion, *supra.*, regarding the State Constitutional and Legislative authority for the powers granted to municipal courts. The City of Clanton has no control over the manner in which the Clanton Municipal Court conducts its operations.  Thus, the City of Clanton "can never be liable under § 1983 for the acts of those [officials] whom the local government has no authority to control." *Grech v. Clayton County, Ga.*, 335 F.3d at 1331.  All Claims made against the City of Clanton for supposed First Amendment violations are therefore due to be dismissed.

**Conclusion**

The foregoing premises considered, the Defendant, the City of Clanton, would respectfully ask this Court to DISMISS the Complaint in this case. The City would further ask for any relief deemed appropriate under the circumstances.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. The Complaint fails to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983.

3. The Complaint fails to state a claim upon which relief can be granted under the Fourteenth Amendment.

4. The Complaint fails to state a claim upon which relief can be granted under the Eighth Amendment.

5. The Complaint fails to state a claim upon which relief can be granted under the First Amendment.

6. The Complaint fails to state a claim upon which relief can be granted under the laws of the State of Alabama.

7. The Complaints fails to state a claim upon which injunctive and/or declaratory relief can be sought.

8. The Defendant pleads all doctrines of immunity and privilege, including, but not limited to absolute judicial immunity and qualified immunity.

9. The Defendant pleads the general issue.

10. The Complaint fails to state a claim upon which relief can be granted pursuant to *respondeat superior*.

11. Defendant contests the form and sufficiency of process and of service of process.

12. Defendant pleads the applicable statute of limitations and/or the doctrine of laches.

13. The Complaint fails to state a claim upon which relief can be granted in the form of compensatory damages.

14. The Complaint fails to state a claim upon which relief can be granted in the form of punitive damages.

15. The Complaint attempts to seek damages in excess of statutory limitations.

16. Defendant pleads all privileges, immunities, and statutory indemnification as provided in § 11-47-190, *et seq.*, Code

17. Defendant pleads all forms and doctrines of waiver and estoppel including, but not limited to collateral estoppel, issue preclusion, and *res judicata*.

18. Plaintiff has failed to join necessary and indispensable parties to this action.

19. The Defendant's police officers had ample probable cause to arrest the Plaintiff.

20. Plaintiff lacks standing to bring this cause of action.

21. Plaintiff's claims are moot.

22. Plaintiff has failed to mitigate her damages.

23. Plaintiff has failed to do equity.

24. The Defendant pleads the doctrine of unclean hands.

25. That this Court is without jurisdiction over the parties and the claims.

26. Defendant denies that it is guilty of conduct referable to which punitive damages could or should be awarded, and denies that Plaintiff has produced

clear and convincing evidence sufficient to support or sustain the imposition of punitive damages against Defendant.

27. The Defendants pleads the doctrine of prior independent intervening cause.

28. Defendant pleads lack of proximate causation.

29. Defendant did not do any of the acts or omissions alleged in the Complaint.

30. Defendant pleads not guilty.

31. Each and every action taken by Defendant was taken with the good faith belief that it was legal and lawful at the time so taken.

32. Defendant pleads offset.

33. Defendant reserves the right to amend or supplement its affirmative defenses to this action as litigation is still in its infancy.

Respectfully submitted, this the 3rd day of March, 2015

s/ R. Warren Kinney
James W. Porter, II
Richard Warren Kinney
*Attorneys for City of Clanton*

**Porter, Porter & Hassinger, P.C.**
P.O. Box 128
Birmingham, Alabama  35201-0128
(205) 322-1744
jwporterii@pphlaw.net
wkinney@pphlaw.net

Shannon L. Holiday
Lee H. Copeland
*Attorneys for City of Clanton*

**Copeland, Franco, Screws & Gill,**
444 S. Perry Street (36104)
Post Office Box 347
Montgomery, AL 36101-0347
T: 334/834-1180 F: 334/834-3172
holliday@copelandfranco.com
copeland@copelandfranco.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been *electronically filed* with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon the following on this the 3rd day of March, 2015.

Alec Karakatsanis
alec@equaljusticeunderlaw.org

William M Dawson, Jr
billdawson94@hotmail.com

Joseph Mitchell McGuire
jmcguire@mandabusinesslaw.com

Matthew Swerdlin
matt@attorneyswerdlin.com

s/ R. Warren Kinney